# In the United States Court of Federal Claims

No. 12-286C
(Filed: March 9, 2015)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| NORTHROP GRUMMAN SYSTEMS CORPORATION, | |
| *Plaintiff*, | Motion to compel; Protective order; Claw back provision; Attorney client privilege; Work product doctrine; Waiver of privilege; Inadvertent waiver; FRE 502. |
| v. | |
| THE UNITED STATES, | |
| *Defendant*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Pending is plaintiff's motion to compel production of documents in this contract proceeding. The matter is fully briefed, and we heard argument on March 3, 2015. For the following reasons, we grant in part and deny in part plaintiff's motion.

On September 17, 2013, we entered a stipulated protective order which facilitated the parties' exchange of discovery materials. It included a "claw back" proviso to the effect that, if a "party inadvertently or mistakenly" produces documents which could have been withheld in whole or in part on the basis of an applicable privilege or the work-product doctrine, that production "shall not constitute a waiver of any privilege or other protection," assuming the party claiming the privilege requests return of the documents. *Nothrop Grumman Sys. Corp. v. United States*, No. 12-286C, ¶ 20 (Fed. Cl. Sept. 17, 2013) (Protective Order).

The parties have engaged in extensive document production. Defendant alone has turned over millions of documents in electronic form. Included within that production are apparently at least 1500 documents which the government now claims are protected by the work product doctrine or attorney client privilege and which it asserts it never intended to produce. It represents

that it did a privilege review, which, in retrospect, turned out to be inadequate. Defendant notified plaintiff that the 1500-plus documents had been produced by mistake and asked for their return. Plaintiff promptly returned them. Plaintiff now moves the court to compel production of those documents because, it argues, the earlier production by defendant was a waiver of any privilege.

Plaintiff does not challenge the assertion that the documents are otherwise privileged. It contends, however, that the claw back provision is subject to an implicit requirement that the prior privilege review was reasonable and that the assertion of privilege must have been prompt. It argues that the review was so inadequate and the assertion of the privilege so dilatory in this case that the claw back provision offers no defense to a waiver of the privilege.

Plaintiff also argues that a second, independent waiver of the privilege took place when the United States Postal Service gave a third party access to many, although not all, of the documents in question in the midst of a *qui tam* proceeding which related to the contract in suit. That disclosure, to the plaintiff in the *qui tam* proceeding, took place approximately a month after plaintiff in this suit first notified the Department of Justice of the likelihood of an inadvertent disclosure in this proceeding.

With respect to what we will call the "DOJ documents"–those documents produced by defendant to plaintiff directly in discovery in this case–defendant conceded at oral argument that it cannot rely on the protection of the claw back agreement if its initial privilege review was unreasonable under the circumstances or if its assertion of the privilege was dilatory. It argues, however, that it took reasonable steps to avoid waiving the privilege and that its assertion of the privilege, once it became aware of the possibility of inadvertent disclosure, was reasonably prompt.

As to the "Postal Service documents" released in the *qui tam* proceeding, defendant concedes that the claw back agreement is inapplicable and that the Postal Service, as the relevant agency, is the "client" for purposes of asserting privilege. It argues, however, that the release must have been inadvertent because the agency had reviewed the materials prior to release and "removed all privileged materials found," Def.'s Opp'n 24, i.e., there was no waiver.

DISCUSSION

2

Some courts have held that a claw back agreement substitutes for any discovery or evidentiary rules which might otherwise apply. *E.g. Crissen v. Gupta*, No. 12-CV-355, U.S. Dist. LEXIS 51100, at \*13-14 (S.D. Ind. Apr. 14, 2014); *BNP Paribas Mortg. Corp. v. Bank of Am.*, No. 09 Civ. 9783, U.S. Dist. LEXIS 75402, at \*30-32 (S.D.N.Y. May 21, 2013); *see also Good v. Am. Water Works Co.*, No. 14-1374, 2014 U.S. Dist. LEXIS 154788, at \*6-8 (S.D. W. Va. Oct. 29, 2014) (order granting motion for entry of protective order with a claw back provision). In this case, that could mean ignoring the requirement of Federal Rule of Evidence 502(b)(2) and (3) that "the holder of the privilege . . . took reasonable steps to prevent disclosure," and "promptly took reasonable steps to rectify the error," on the theory that the time saved by not doing what the rule contemplates, at least in paragraph (b)(2), is lost if a careful review is still required.

While recognizing that introducing the requirements of 502(b)(2) and (3) into enforcement of the protective order runs the risk of making it look superfluous to an extent, we believe that such a gloss does no violence to this particular protective agreement. Paragraph 18 requires each party to "review its documents for privileged information prior to production." A normal reading suggests that a reasonable effort is implied. In addition, the rule requirement of promptly moving to rectify the mistake is arguably fully consistent with the claw back agreement. The claw back provision simply does not speak to the question.

In any event, defendant's concession that the protective order's claw back provision is subject to the implicit requirements that the initial privilege review must have been reasonable and its assertion of the privilege timely saves our having to resolve a dispute in the case law. As to the DOJ documents, the question then becomes whether defendant's initial privilege review was reasonable and whether defendant acted reasonably promptly in asserting privilege once plaintiff called its attention to the possible mistake. Because it asserts the privilege, defendant bears the burden of proof. *Den Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 503 (2009). We deal with Postal Service's subsequent disclosure separately.

We are prepared, in the case of the DOJ documents, to assume that the release of privileged documents was inadvertent. Government counsel explained the steps he took to cope with examining over three million documents for privilege. Plaintiff's initial document request was served in March 2013. It took approximately seven months to respond, which, under the circumstances we find unsurprising.

The agency's documents relating to the contract at issue were kept in two repositories: a hard drive referred to as the "FSS Server" and a different hard drive containing emails called the "FSS Emails Collection." An outside document review company was engaged to do a digital word search in both for privileged materials using terms such as "privilege" or "work product" or for documents that contained the name of any one of a number of agency attorneys involved with the contract anywhere in the document. That search was scrapped when it produced approximately 560,000 documents. A narrower search was then initiated only for documents that were sent to or received by attorneys.

This second search identified approximately 83,000 documents, which were withheld from production. The balance of the documents was released without any further testing or sampling on October 31, 2013. On November 26, 2013, counsel for plaintiff contacted government counsel, pointing out that apparently some privileged materials had been produced, and seeking clarification with respect to two particular documents. On December 19, 2013, government counsel invoked the claw back provision as to those documents. Within the following three months, plaintiff notified government counsel of additional concerns about more documents. It was not until June 12, 2014, that counsel for the government plainly invoked the privilege with respect to all of the documents currently at issue and sought their return pursuant to the protective order.

As counsel for the government explained, two mistakes were made during the second effort to identify privileged documents. First, counsel was under the impression that the third party vendor was searching, not just for attorney names, but for terms such as "privileged" or "work product." In fact, the vendor did not do so. Second, counsel was under the impression that the "to and from" attorney search among emails included such addresses anywhere in the chain of emails included in the document, not just the last email. Again, that turns out to have been an erroneous assumption.

Plainly there was too much reliance on the third party vendor. Greater care and oversight should have been exercised by counsel. This conduct was not so careless, however, as to warrant a conclusion that it was tantamount to a waiver, particularly in light of the parties' reliance on the protections of the claw back proviso. While such an agreement does not vitiate a duty of care, we are less inclined to treat what happened as unreasonable reliance on the safeguard of the claw back protections, particularly given the large volume of material. Nor do we believe that the delay in fully invoking the claw back

provision from November 26, 2013, to June 12, 2014, warrants forfeiture of the privilege. If nothing had been done by the government until June 12, we would be inclined to agree. In fact, government counsel sent six letters or emails regarding inadvertent production, beginning on December 19, 2013, and concluding with the comprehensive request in June 2014. During that period of time, the government undertook a more comprehensive document review of the failed efforts of 2013. While plaintiff should have been kept better informed of the reasons for delay, we cannot hold that this amount of time vitiates the government's right to assert privilege. In short, defendant can assert privilege with respect to the documents supplied by DOJ on October 31, 2013.

We reach a different result with respect to the documents released by the Postal Service. Federal Rule of Evidence 502(b), Inadvertent Disclosures, provides that a disclosure does not waive the work product or attorney client privilege if it was inadvertent, if the holder of the privilege took reasonable steps to prevent disclosure, and if it promptly took steps to rectify the error once discovered. The Postal Service's release to the relator in the *qui tam* proceeding cannot get past either or both of the first two requirements.

For aught that appears, the disclosure to the relator of the entire FSS hard drive was anything but inadvertent. In its briefing, counsel for the government tells us that "USPS counsel had reviewed the FSS Server material for privilege as it was being compiled, together with electronic privilege searches, and removed all privileged material found." Def.'s Opp'n 24. At oral argument, the court was told that counsel for the Postal Service examined the contents of the server document by document as they were added to the database to delete privileged material. Far from indicating that the release was "thus inadvertent," *id.,* what it strongly suggests is that the Postal Service had every intention to give the relator in that suit the documents as to which the government now wants to assert privilege. Unlike the documents inadvertently released by the DOJ, as to which counsel has given us a detailed explanation of the steps it took to prevent inadvertent disclosure, and, most importantly, an explanation of the precise errors that lead to the inadvertent disclosure, there is nothing comparable to explain what the Postal Service did. It appears that the Postal Service merely changed its mind about what should be protected.

Morever, a copy of the FSS Server was given to the relator in the *qui tam* suit in January 2014, although the briefing does not reflect the precise date. This was at least one month after the government was initially notified by plaintiff of the possibility of an inadvertent release of privileged

information.  It is unclear whether that production was before or after an email written by counsel for plaintiff on January 21, 2014, once again raising a question about possible production of privileged material.  That email specifically referred to one particular document which became the focus of the parties briefing: a 2013 Office of Inspector General Report ("OIG Report") concerning this contract.  This is one of the documents which the government contends is protected by the attorney client privilege or work product doctrine.

The OIG Report was added to the FSS Server ten times.  Thus, assuming counsel for the Postal Service screened for privilege every time material was added to the server, the decision not to treat it as privileged had to occur on ten occasions.  It is no answer, as counsel for the government suggests, that, having seen the document once and not directing it to be removed, we can assume subsequent treatment was controlled by the first review.  The FSS Server's collection of documents was accumulated over many months.  Thus, the decision to leave the OIG Report on the server did not occur only in one review.  The document had to be seen repeatedly.  The only logical inference is that this document, which might strike some as sensitive, like the others, was of no concern to the Postal Service.

A party can waive a privilege, and the logical assumption is that a knowing production, after careful review, waives the privilege.  The government bears the burden of proving it has not done so here with respect to the FSS Server documents released by the Postal Service.  Defendant did not meet that burden.  The only fair inference is that the agency made the considered judgment that it would not claim privilege as to these documents or that it was so careless that production was tantamount to a knowing waiver.

## CONCLUSION

Plaintiff's motion to compel is granted with respect to the FSS Server documents produced by the Postal Service to a third party.  It is denied in all other respects. To the extent there are documents on both servers, the privilege was waived.

s/Eric G. Bruggink
Eric G. Bruggink
Judge
