# In the United States Court of Federal Claims

No. 12-286C
(Filed: April 14, 2016)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

        *Plaintiff*,

                          Motion to Compel; Work Product
                          Doctrine; Spoliation; RCFC 37;
v.                        RCFC 26; Discovery Sanctions.

THE UNITED STATES,

        *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

     *John W. Chierichella*, Washington, DC, with whom was *Anne B. Perry* and *David S. Gallacher*, for plaintiff.

     *Cameron Cohick*, *Jennifer E. LaGrange*, *Barbara E. Thomas*, *Rebecca S. Kruser*, Trial Attorneys, United States Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Martin F. Hockey, Jr.*, Assistant Director, for defendant. *Janine Castorina* and *Michael F. Kiely*, United States Postal Service, Law Department, of counsel.

ORDER

     On January 28, 2016, plaintiff filed three discovery related motions: 1) a motion to compel and for spoliation sanctions; 2) a motion for sanctions for failure to meet court ordered discovery deadlines; and 3) a motion to amend the discovery schedule. Defendant opposed each of those motions and cross-moved for its own amended schedule. The motions are fully briefed, and oral argument was held on April 4, 2016. We have already ruled on the cross motions for a new schedule by separate order. We begin with a brief recital of the procedural background of this case.

This case was filed in 2012 and concerns two contracts between Northrop Grumman and the United States Postal Service ("USPS") regarding a flat mail sequencing system ("FSS"). The first contract was to design and build a prototype, and the second contract was for the manufacture of several more of the systems. Plaintiff alleges breach of the production contract and seeks reformation of the contract and damages resulting primarily from alleged changes made by USPS to the design. Defendant counterclaims for the costs it alleges were incurred during the delay in production of the systems.

The court adopted the parties' joint proposed discovery schedule in February of 2013, which would have concluded fact discovery on July 3, 2015, and all discovery by January 15, 2016. Document production was to have been completed by January 31, 2014.

On May 29, 2015, more than year after the initial deadline for document production, plaintiff moved to compel documents not yet produced by defendant and for sanctions for defendant's failure to meet discovery deadlines. Defendant moved to amend the schedule to conclude document discovery by September 4, 2015. We denied the motion to compel, in no small part due to defendant's representations that it could conclude document production by September 4, 2015, and adopted defendant's proposed schedule.

On September 4, 2015, defendant made a significant document production of just over four million documents. It followed that shortly on September 11, 2015, with nearly 2.3 million additional documents. That was followed by a December 21, 2015 production of 521,737 documents that it had initially withheld in September for privilege review.

Also on September 4, 2015, defendant discovered a collection of documents initially thought to have been provided to defense counsel by USPS, known as the ".194 drive," and thus presumed to have been already produced. Re-review by counsel in October 2015 suggested that not all of these documents had been provided to him nor then produced to plaintiff. This prompted a request in November 2015 by Department of Justice to USPS to again provide the .194 drive documents. After that was completed and counsel was able to compare with the list of documents already produced to plaintiff, it was discovered that the .194 drive documents had not been fully produced. On February 4, 2016, defendant completed that production by sending another 453,795 documents to plaintiff.

This re-review and late-production of the .194 documents prompted further questions from USPS agency counsel to known document custodians at USPS. This effort resulted in another slate of documents thought to have been produced earlier, and on March 29, 2016, defendant sent 67,000 more documents to plaintiff. Defendant continues privilege review of documents produced in 2015 and beyond.

I. Motion To Compel And For Spoliation Sanctions

Plaintiff asks the court to compel defendant to produce documents regarding the Postal Service's review and evaluation of Northrop's Request for Equitable Adjustment ("REA") in 2009 and to compel defendant to allow plaintiff to examine deponents regarding that same subject. Defendant has withheld or clawed back such documents as being work product generated in anticipation of litigation. Plaintiff argues that these documents are considered to have been the product of USPS's ordinary course of business and not generated in anticipation of litigation. In the alternative, plaintiff argues that, if litigation could have been anticipated as early as 2009, then defendant has intentionally or negligently destroyed many documents that might have otherwise been discoverable.

Plaintiff submitted an REA on March 31, 2009. It followed that up with a certified claim under the Contracts Disputes Act on July 8, 2010. Northrop submitted two more certified claims thereafter. USPS instituted a litigation document hold in November of 2010. Plaintiff argues that the litigation hold should have been instituted as soon after March 31, 2009 as practicable, which is to say that submission of Northrop's REA put the agency on notice of impending litigation. Thus, in plaintiff's view, the 2010 document hold was 19 months too late.

Plaintiff believes that a large quantity of documents were destroyed prior to the litigation hold. Plaintiff points to the general volume of documents produced for the various years at issue, finding a marked decline in the number of documents from the period prior to the hold being instituted. Plaintiff also points to the deposition testimony of two deponents who testified that they did not receive notice of a litigation hold until shortly before their depositions in 2015. All of this leads plaintiff to ask for spoliation sanctions against defendant, the particulars of which would be cemented after defendant undertakes a forensic analysis of destroyed documents and whether any might be recoverable.

Defendant maintains two seemingly inconsistent positions regarding these issues.  First, defendant asserts that the agency's internal review and evaluation regarding Northrop's 2009 REA is wholly protected by the work product doctrine. Defendant believes that the earliest documents and discussions within USPS regarding Northrop's REA were made or conducted in preparation for impending litigation.  Thus relevant documents are not generally discoverable and defendant need not produce a witnesses for deposition regarding the subject.

In response to the spoliation sanction request, however, defendant maintains that USPS was under no duty to preserve documents until well later than 2009.  Defendant points to the differing views among USPS personnel involved in review of the REA and certified claims as to whether litigation was anticipated, arguing that a duty to preserve evidence does not arise until a critical mass of those involved should have reasonably believed litigation to be forthcoming.

Mr. Robert D'Orso was the Contracting Officer ("CO") assigned to review the REA and the first certified claim.  In a declaration submitted along with defendant's opposition, he states that he viewed the submission of the REA as a point of no return due to the number of issues raised and the dollars associated with them.  Foreseeing no significant concessions from either side, he concluded that litigation was inevitable after the submission of the March 2009 REA.

By contrast, Mr. David Milnes, the CO for the production contract, did not take such a pessimistic view upon receipt the REA.  It was not until September 2010, after the submission of the July 2010 certified claim and a subsequent cost proposal from Northrop that he believed that negotiation would fail and that litigation was likely.  Similarly, Mr. Charles Smith, who was involved in the review of the REA and certified claims, testified that he did not think litigation likely until sometime after Northop's submission of its first certified claim and the government's denial of the second and third certified claims in 2012.

Rule 26(b)(3)(A) of this court's rules encapsulates the work product doctrine. It provides that, "ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial." RCFC 26(b)(3)(A).  This protects documents and other evidence that is otherwise not privileged so long as it was generated in anticipation of

litigation. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006). This protection can be overcome, however, upon a showing of "substantial need" and that the party cannot obtain the substantial equivalent "without undue hardship." RCFC 26(b)(3)(A)(ii).

Spoliation sanctions are appropriate when the party who had control over the destroyed evidence had an obligation to preserve it at the time of destruction, the destruction was the product of a "culpable state of mind," and the destroyed evidence was relevant. *Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007). The culpability requirement need not be met by a showing of intentionality or bad faith; ordinary negligence can meet the test. *See United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 268-70 (2007). The level of scienter may be relevant to the severity of the sanction, however. *Id.* at 270-71.

We find the relevant date when USPS should have began preserving documents to have been upon receipt of the REA in 2009. The declaration of Mr. D'Orso is conclusive. He was the CO in charge of responding to the REA and the first certified claim. He had the responsibility and power to obligate the agency in response to Northrop's initial submission of its claims. We find, in these circumstances, that his view controls.[1]

Defendant is correct when it states that the test is an objective one, but that does not make Mr. D'Orso's statements any less relevant or reasonable. Mr. D'Orso detailed in his declaration that his experience in dealing with Northrop indicated to him the difference qualitatively and quantitatively between plaintiff's earlier REAs and the 2009 REA that led to litigation. Those earlier, smaller REAs were tied to specific requests for change orders from the government. The 2009 REA, on the other hand, was cumulative and comprehensive in scope. Further, it was apparent to Mr. D'Orso, at the time of the 2009 REA, that the relationship between the parties had broken down and that each found the other's performance to be lacking. These are objective indicia of the reasonableness of the anticipation of litigation at that time.

---

[1] Nor was he alone in his view. In correspondence between the parties in February 2016, defendant claimed the work product protection covered a May 7, 2009 email between USPS employees, one of whom was an attorney, because it was generated in the course of evaluating the REA and was thus made in anticipation of litigation.

In anticipation of that holding, we directed defendant to submit to chambers documents dated from March 31, 2009 to November 17, 2010 that were withheld or clawed back on the basis of only the work product doctrine for *in camera* review.  After review of those documents, we confirm that they are subject to the work product doctrine protection.

As we held above, USPS was on notice as of the date of the 2009 REA that litigation was likely.  Documents dealing with the agency's response to the REA, evaluating litigation risk both in terms of contractual language and dollars associated, are plainly work product and are thus to be protected from production unless plaintiff can make a showing of need and hardship.  We find that plaintiff has not met that burden.

The sheer volume of documents already produced and not claimed as privileged militates against overcoming the work product protection for these few documents.  Additionally, although the passage of time always has the effect of dimming recall, from the deposition transcripts and declarations we reviewed in deciding these motions, plaintiff's efforts to plumb the depths of agency personnel's recall has been far from fruitless.  Further, the nature of this case suggests against a showing of need.  The agency's initial views with regard to the arguments presented in the 2009 REA are not likely to be necessary to an argument that will largely depend on contract interpretation and the parties' actual conduct in performance of the contract, none of which is alleged to have been lost from memory.  Plaintiff has not overcome defendant's assertion of the work product doctrine.

As to the question of spoliation, we have established that the agency was late in implementing a litigation hold for documents regarding the FSS contracts.  We also know that at least two USPS employees were unaware of the hold until 2015.  Others were made aware earlier but after 2009.  The possibility of spoliation exists.  Plaintiff's quantitative argument that we should infer mass destruction of relevant documents, especially emails, from the difference in the numbers of documents produced prior to the hold versus the number after is unpersuasive, however.  Any number of explanations could account for this difference.  As defendant points out in its opposition, the emails produced to it by plaintiff follow the same pattern, a spike in number after 2011.  This, defendant argues, is indicative of a rise in the level of work on the project and not a deficiency in production.

Absent something more concrete, we are not prepared to impose a harsh sanction under these circumstances. Plaintiff's request that defendant undertake a costly and time intensive forensic analysis of potentially missing data is unwarranted at this time, as is imposition of any negative inference. At most, defendant was negligent in not issuing a litigation hold earlier. There has been no suggestion of bad faith or intentional destruction of relevant documents in the face of impending litigation. Nor has plaintiff made a showing that information contained in possibly lost emails is unavailable to it through other sources

That is not to say, however, that the court is sanguine about the potential of spoliation. Accordingly, plaintiff's motion is denied without prejudice to the possibility that it can ask for a spoliation sanction in the future if it can make a more concrete showing of missing information relevant to its case in chief or defense to the counterclaim that is otherwise unobtainable.

## II.  Motion For Sanctions

Plaintiff also asks the court to impose sanctions on the government under rule 37 for failure to meet the court ordered document discovery deadlines. Plaintiff requests that defendant be barred from using any late-produced documents as evidence in its defense and affirmative counterclaim, that defendant reimburse plaintiff for the cost of electronic hosting of millions of pages of late-produced documents, and asks for reimbursement for the cost of bringing this motion. Plaintiff finds especially egregious the fact that defendant proposed the current September 4, 2015 deadline, at least partially, as an assurance to plaintiff and the court that sanctions were unwarranted last year.

Rule 37(b)(2)(A) permits "just" sanctions when a party "fails to obey an order to provide or permit discovery." This includes the possibility of prohibiting the offending party from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." RCFC 37(b)(2)(A)(ii). Courts have generally imposed a proportionality standard in crafting sanctions under this rule. *See, e.g.*, *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996); *Morris v. United States*, 37 Fed. Cl. 207, 213 (1997). A rule 37 sanction is appropriate when the failure is due, not to inability or other justifiable excuse, but to some fault on the part of a party against whom it is sought. *See Societe Internationale Pour Participations v. Rogers*, 357 U.S. 197, 2012 (1958); *Hendler v. United States*, 952 F.2d 1364,

1368 (Fed. Cir. 1991).  Subsection (C) further contemplates payment to the aggrieved party of its "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified."   RCFC 37(b)(2)(C).

As a general matter, we are sympathetic to plaintiff.  Discovery has been ongoing for over three years and the deadline for document production has twice passed and been extended.  We are mindful, however, that the bulk of the late-produced documents complained of were produced only one week after the deadline had passed, and plaintiff has not alleged any specific prejudice associated with that one week slippage.  Defendant explained that this was due to a technical limitation on the part of its IT contractor.  Additionally, the December 2015 production was the result of further privilege review of the documents produced in September, which revealed that half a million more documents were discoverable rather than privileged.  We do not find any prejudice to plaintiff from these productions nor do we find that the government intentionally disregarded the deadline.  The interest of justice would not be met with a sanction for these two lapses.

The other two later productions, although smaller in quantity, are troubling.  Both are the result of what can, at best, be described as negligence on the part of USPS or, at worst, a reckless disregard of its obligation to timely produce relevant documents to plaintiff.  Defendant argued that these lapses were justified by the decentralized nature of the Postal Service and the resulting difficulty in assuring that all documents had been produced.  We find that unconvincing, however, when both sets of the latest-produced documents were from locations or repositories known to USPS well in advance and both of which had been the subject of assurances from USPS personnel that they had been sufficiently plumbed for relevant materials.  Those representations were either untruthful or negligently made.  It is clear that these lapses were not justified.  Greater care should have been taken to meet court ordered deadlines.  Plaintiff has had to take depositions in the interim without the benefit of having reviewed those documents.  A sanction is warranted.

In view of the foregoing, the following is ordered:

1. Plaintiff's motion to compel and for spoliation sanctions is denied without prejudice to plaintiff's ability to again move for more specific spoliation sanctions if warranted.

2.  Plaintiff's motion for sanctions for failure to meet discovery deadlines is granted in party and denied in part.  It is denied as to the September and December 2015 productions.  It is granted with regard to the documents produced after that.

3.  Accordingly, defendant is sanctioned as follows:

A.  Defendant is precluded from using documents produced after December 2015 either in defending plaintiff's claims or in support of its counterclaim to the extent that those documents were not produced earlier. Any documents produced prior to 2016 that are duplicated in the 2016 productions are not precluded.  Defendant's duty to supplement earlier document production continues should it discover yet more relevant documents, but it is precluded from making affirmative use of those documents.

B.  The Postal Service is directed to pay half of plaintiff's attorney's fees in bringing the motion for sanctions for failure to meet deadlines.   The parties are directed to cooperate in attempting to determine the appropriate amount plaintiff will be reimbursed by May 20, 2016.  The parties are directed to file a status report by May 23, 2016, indicating if the amount and means of payment have been agreed to.


s/Eric G. Bruggink
Eric G. Bruggink
Judge