# In the United States Court of Federal Claims

No. 12-286C
(Filed: October 17, 2022)
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * *

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

Motion for Reconsideration, Delay damages; Concurrent delay.

* * * * * * * * * * * * * * * * * * * * *

ORDER ON MOTION FOR RECONSIDERATION

On June 27, 2022, the court, after trial, entered an order adjudicating plaintiff's complaint and defendant's cross-claim in this breach of contract action. We rejected much of plaintiff's affirmative claim for breach of contract damages, although we awarded $66,713,926.25[1] plus interest, reflecting the amount plaintiff was due as the contract balance plus several smaller discrete cost items and minus the government's proven discrete cost claims. We rejected virtually in whole defendant's counter-claim for damages associated with delay and breach through non-performance, with the exception of several more minor discrete cost claims. Judgment was deferred pending the parties' calculation of interest under the Contract Disputes Act.

---

[1] That amount, stated in the conclusion of our trial opinion, was the result of a minor clerical error in the tally of the sum of the discrete cost items proven by defendant. As pointed out in the parties' joint status report of July 18, 2022, the correct amount owed to plaintiff is $66,708,926.25. That error will be corrected in the order for judgment.

Pending is defendant's motion for reconsideration, limited to the court's finding that defendant had not proved any entitlement to delay damages. We directed plaintiff to file a response. The matter is fully briefed. For the reasons set out below, we deny the motion for reconsideration. While we reject on the merits defendant's request that we reconsider entitlement, we alternatively reopen for the sole purpose of making additional findings with respect to the damages aspect of the counter-claim.

I. Defendant's Delay Claim—Entitlement

Defendant's request for reconsideration rests primarily on our statement in the trial opinion that the government's scheduling expert provided "no basis on which we could calculate our own measure of damages for the period of time during which defendant was not concurrently delaying the final FAT test." 160 Fed. Cl. 744, 778 (2022). Defendant now cites other testimony from Mr. McGrath[2] as evidence upon which the court could craft a reasonably certain measure of damages for the period of delay prior to the Postal Service's insistence on the CASTR changes. The evidence cited now is comprised of Mr. McGrath's testimony regarding the mounting delay beginning with Northrop's initial FAT failure in August 2008, which continued until June 2009, when the Postal Service made its CASTR demand, and the planning schedules prior to June 2009, which, according to defendant, show the "baked-in" delay as of each of the planning schedules.[3] This comparison between planning schedules and the Mod. 2 schedule of deployment results in 385 machine months, which can be multiplied by Mr. Lesch's lost savings per machine month figure of $142,916 to net delay damage of $55,022,660, defendant argues now.

Plaintiff answers that the court did not ignore any of the planning schedules, nor any testimony from Mr. McGrath, and thus there is no basis on which reconsideration can be granted under the rules—the evidence is neither new nor was it ignored such that it would constitute plain error. *See Bishop v. United States*, 26 Cl. Ct. 281, 285-86 (1992). Further, Northrop argues that the assertion that the government's damages period could be shifted to the eight months prior to the CASTR changes directive is new and is thus inappropriate to raise in a post-trial motion. We agree.

---

[2] As defendant points out, we inadvertently referred to Mr. McGrath as Mr. McGovern in the trial opinion.

[3] Defendant also argues that plaintiff essentially admitted the same in its second certified claim by adopting a "but-for" schedule that showed Northrop's delay for this period.

As we noted in our trial opinion, defendant has not heretofore claimed "entitlement . . . to the eight months of time after the initial FAT failure but before its CASTR directive." *Id.* at 778 n.28. Its delay damages theory prior to trial, during trial, and in its post-trial briefing was based on the 10 months of ultimate delay to deployment of the final machine. It cannot recover for that delay, however, because it too delayed the project by insisting on CASTR changes prior to retesting, which delayed the project for a year. *Id.* at 778. Nothing in defendant's motion calls into question those findings. As such, reconsideration is unavailable.

Mr. McGrath's testimony regarding the various planning schedules is likewise unavailing as a basis for reconsideration because, as we noted in our opinion, he did not consider the impact of CASTR-related delays in his conclusions regarding accumulated delay. We disagreed with his conclusion that CASTR was unrelated to the ultimate delay of the machines. We cannot, after-the-fact, filet and reassemble the record of his testimony to provide a new basis for a delay finding based on assumptions not made by him.

Further, as Northrop points out in its response to the present motion, the bulk of the now-claimed 385 lost machine months were incurred after the beginning of the Postal Service-caused delay period. The general rule is that a party cannot recover for delay during a period in which it was concurrently delaying the project. *E.g. Blinderman Const. Co., Inc. v. United States*, 695 F.2d 552, 559 (Fed. Cir. 1982). In the abstract, a party might be able to establish damages in similar circumstances, even when the delayed events take place during the concurrent period, due to a root cause analysis which shows that the delay was solely the other party's fault and was incurred prior to the period of concurrency. Here, however, Mr. McGrath's analysis lacks this sort of nuance. He did not consider the effect of CASTR change-caused delay. The court, thus, has no basis on which to conclude that any of the now-asserted lost savings were solely due to plaintiff's failure to pass FAT. We deny reconsideration on this issue.

II. Defendant's Proof of Damages for Delay

Because we rejected defendant's entitlement to delay, it was unnecessary for us to address damages. We noted, however, that "we have serious misgivings about how defendant calculated the financial impact of each month of delay in machine delivery." 160 Fed. Cl at 788 n.29. In its motion for reconsideration, defendant challenges that aside and argues that it had demonstrated a means of calculating the value of each month of plaintiff's delay in delivering each machine. We reopen our prior findings

3

for the purpose of making additional, albeit presumably unnecessary, findings to support our skepticism.

In our earlier opinion, and to some extent additionally explained above, our fundamental difficulty with defendant's damage theory is that it was not presented in a complete fashion. There was never a coherent connection made between the collective claim for ten months of delay, the individual month by month claims for each allegedly delayed machine, and the performance calendar. Nevertheless, even if at least one month of delay for at least one machine had been established, defendant never satisfactorily proved what that month of delay cost the Postal Service.

The overall approach to damages for delay made sense. Use of the machines allowed the Postal Service to reap the benefit of labor efficiency resulting from the flat mail sorting machines: the machines were more efficient than human beings at sorting each a carrier's mail in delivery sequence. Without time spent sorting mail in the office, each carrier was able to cover a larger territory, thereby allowing the elimination of whole carrier routes. I.e., the same delivery points could be covered with fewer carriers. Given the lack of perfect fungibility between routes, carriers, and addresses, and given the need to adhere to certain labor contract requirements as well, the generation of savings would not have been one hundred percent efficient, and we were not looking for exactitude. Nevertheless, measuring the effect on a large, nationwide, scale should, at least theoretically, have shown an overall reduction in the number of routes and a concomitant reduction in mail carrier hours. As plaintiff's expert, Mr. Tucker testified, "if you take manual sorting and put it on a machine, I would expect office hours to decrease." Tr. 10436. And that is what defendant's experts, Mr. Joel Lesch, a CPA, and Mr. John McGrath claim to have shown.

Plaintiff's damages expert, Mr. Tucker, accepted the conceptual framework of Mr. Lesch's lost savings model, including the cost of operating the machines and generally the cost of the labor hours, but disagreed with a critical input, namely, the city carrier hours saved. Plaintiff agrees that hours were saved but posits that the cost to operate the machines exceeded the value of any hours saved, i.e., no net savings. The crux of the disagreement between the experts was the question of which dataset from which to draw the labor hours to make a comparison of hours spent by carriers pre and post-FSS machines coming online. Defendant used the Postal Service's Site Activation Report ("SAR") database while plaintiff drew its conclusions from the Postal Service's Management Operating Data System ("MODS").

There is no dispute that results drawn from the SAR's data were never anything other than estimates, which the Postal Service used as a projected baseline from which it made route adjustments. The SAR data that Mr. Lesch used was from the January 2, 2015 SAR report. Despite that, he and the government insist that it provides the proper comparators for calculating any lost savings because it was created and maintained by Mr. Rice at the Postal Service to track carrier routes eliminated due to FSS implementation. The fact that it does not track actual day-by-day hours expended is a benefit, according to Mr. Lesch, because it thus does not suffer from seasonality bias (more mail during the holiday season). Tr. 9645-47. It is a consistent baseline against which the Postal Service measures its performance and makes adjustments. Plaintiff's expert, Mr. Tucker, in fact, used the route adjustment figures from the SAR in his analysis of lost savings. Mr. Lesch further explained that he had adjusted the figures to account for declining mail volumes to ensure that his model did not account for savings not due to FSS machines. Tr. 9238-39.

MODS, on the other hand, was accounting data, meaning it was a collection of actual city carrier hours, routes, and mail volumes. Mr. Tucker thus averred that it provided a more reliable basis from which to draw conclusions regarding lost savings. He looked at the hours recorded for city carriers at locations for the month prior to a FSS machine coming online and compared them with the hours expended in the first full month after the FSS machines were in use. The results, according to Mr. Tucker, were drastically different than those found by Mr. Lesch using the SAR. It showed no net savings after adding in the costs associated with running the FSS machines. This is the result of two main differences. Mr. Tucker found that the SAR-based assumption of hours expended per route post-FSS was understated (7.94 vs. 8.28), meaning that the assumed savings were overstated. This seemingly small difference adds up over the 33,573 remaining routes after consolidation. The result is a difference of saved hours per route of 8.14 using the SAR versus only 4.81 using the MODS data.

Mr. Tucker was also unconcerned with seasonality because he performed two independent calculations of the potential effect on his numbers. The first, an adjustment of the monthly figures to compare them to high, medium, or low volume figures had a minimal impact. It resulted in a minor increase in savings, but not enough to change his conclusion of no net savings. Tr. 10375. Mr. Tucker's second seasonality analysis was essentially a comparison of his figures to the monthly mean. When adjusting to the mean (using the average instead of the actual monthly figures), he likewise found no net savings.

When confronted with these two different approaches, we find Mr. Tucker's the more reliable. Although the SAR is not contrived, in the sense that the Postal Service does use it to make decisions regarding route adjustments, it is not reflective of what happened in fact. As explained by Mr. Hooper from the Postal Service, it was a continuously updated set of baseline estimates. It is useful for planning and forecasting, but not for calculating lost savings. MODS, on the other hand, recorded the effort actually expended and paid for by the Postal Service. Although the snapshots taken by Mr. Tucker in his month before versus month after comparison might have been narrow, his seasonality and sensitivity analyses were robust enough to assure us that his was work was more likely to represent what actually happened. Further, his conclusions more closely align with the Postal Service's own statements to the Postal Regulatory Commission. Through 2016, the Postal Service repeatedly represented that it could not isolate any savings associated with the FSS machines. In fact, in 2018, the Postal Service came up with figures that were nearly 75 % lower than those found by Mr. Lesch. When plugged into the damages model, they result in no net savings. Tr. 10341-42 (Tucker).

The parties presented other arguments regarding declining mail volumes and the increase in parcels delivered with the growth of e-commerce. Although unnecessary to discuss in any greater detail, we find that neither of these factors militate in favor of a finding of net savings. In sum, defendant has not proven the quantum of the savings it claims, even if we assume, and we cannot, the delay prior to the CASTR directive as compensable. Defendant cannot raise a new damages theory on reconsideration. Even if it could, it would not be supported by the evidence, and, in any event, no lost actual savings were proven at trial. Accordingly, defendant's motion for reconsideration (ECF No. 355) is denied. Judgment will be entered by separate order.

                              s/Eric G. Bruggink
                              ERIC G. BRUGGINK
                              Senior Judge